UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SNAP-ON INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 6914 |
| | ) | |
| ROBERT BOSCH, LLC, ROBERT BOSCH, | ) | |
| GmbH, and BEISSBARTH GmbH, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendant Beissbarth GmbH's ("Beissbarth") and Robert Bosch, GmbH's ("Bosch Germany") (collectively, the "German Defendants") motions to dismiss Plaintiff Snap-on Inc.'s ("Snap-on") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the German Defendants' motions are denied.

## BACKGROUND[1]

On November 3, 2009, Snap-on filed a complaint against Robert Bosch, LLC ("Bosch USA") alleging that Bosch USA infringed on several of its patents relating to

---

[1] For the purposes of a motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

a wheel aligner used to service automobiles. On August 18, 2011, Snap-on filed an amended complaint, in which it added Bosch Germany and Beissbarth as defendants. Both Bosch Germany and Beissbarth are corporations organized under the laws of Germany. Beissbarth and Bosch USA are subsidiaries of Bosch Germany, and the presidents of these two subsidiaries hold high-level management positions at Bosch Germany. Additionally, the companies share physical assets and intellectual property. The German Defendants distribute their products for sale in North America through Bosch USA.

For purposes of the Defendants' Motions, we must accept all well-pleaded facts as true. Snap-o alleges that the German Defendants worked together with Bosch USA "in a coordinated effort to bring [the infringing aligner] to the United States market." Bosch Germany directed the activity that resulted in the sale of the infringing wheel aligner in the United States. To facilitate the introduction of the infringing aligner in the United States, Bosch Germany acquired Beissbarth, a company experienced in the manufacture of diagnostics equipment such as wheel aligners. The German Defendants and Bosch USA (collectively, "Defendants") then allegedly engaged in a joint enterprise to sell the infringing aligner in the United States. The Defendants collectively participated in sales of the wheel aligner, held several meetings in Illinois related to the sale of the infringing aligner, conducted testing on the wheel aligner in

Illinois, and trained technicians on the proper maintenance and operation of the wheel aligner in Illinois.

On January 16, 2012, the German Defendants filed motions to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Court allowed limited discovery into the jurisdictional issue, which is still ongoing. Meanwhile, on May 4, 2012, the German Defendants filed the instant motions to dismiss Snap-on's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. To state a claim, the allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a plaintiff must provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a claim must provide sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 570). In ruling on a motion to dismiss, a court accepts all well-pleaded facts and

allegations as true and draws all reasonable inferences in the plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

## DISCUSSION

### I. Timeliness of Motion

Snap-on contends that the German Defendants' motions to dismiss for failure to state a claim are procedurally improper because they previously filed motions to dismiss for lack of personal jurisdiction. Federal Rule of Civil Procedure 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Although the German Defendants filed their current motions to dismiss after filing their motions to dismiss for lack of personal jurisdiction, refusing to consider the merits of the instant motions would run afoul of the underlying purpose of Rule 12(g). The consolidation requirements of Rule 12(g) are designed to prevent piecemeal litigation, which delay the judicial process. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). In this case, the adjudication of the German Defendants' Rule 12(b)(6) motions would promote judicial efficiency by advancing the litigation. The Court had previously allowed limited discovery to resolve the parties' jurisdictional dispute raised in the German Entities' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, and that discovery is highly contested and still ongoing. If the German

Defendants are successful on their motion to dismiss for failure to state a claim, it would obviate the need for the ongoing jurisdictional discovery.

The German Defendants, having sought prior leave of the Court to file their Rule 12(b)(6) motions, represented that the motions were filed, in part, to avoid the time, expenses, and resources involved in resolving their jurisdictional dispute. There is no dilatory motive in the German Defendants' motions to dismiss for failure to state a claim, and the motions promote rather than hinder the policy underlying Rule 12(g). *See Donelli v. Peters Secs. Co.*, No. 02 C 0691, 2002 WL 2003217, at *4 (N.D. Ill. Aug. 29, 2002) (allowing a Rule 12(b)(6) motion to dismiss that was filed after a fully adjudicated Rule 12(b)(7) motion to dismiss because the motion was "not filed for the purpose of delay" and the "adjudication of the [Rule 12(b)(6)] motion would narrow the scope of the matter, greatly expediting resolution of the case"). Accordingly, the German Defendants' motions are not contrary to the Federal Rules of Civil Procedure, and we will therefore consider the substance of the motions over Snap-on's objections.

## II. Direct Infringement

A patent holder may sustain a cause of action for direct infringement against anyone who "without authority makes, uses, offers to sell, or sells any patented invention within the United States." 35 U.S.C. § 271(a). The German Defendants

maintain that Snap-on has failed to allege that any infringing activity attributable to them took place in the United States.

"It is well established that the reach of Section 271(a) is limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005) (citation omitted). Snap-on contends that the amended complaint states a claim for direct infringement because it alleges that the German Defendants: (1) sold or offered to sell the infringing product in the United States; and (2) used the infringing product in the United States.

### A. "Offer to Sell or Sell"

Snap-on's amended complaint alleges that the German Defendants "worked together in a coordinated effort" to bring the wheel aligner to the United States. In particular, Snap-on expressly alleges that the Defendants sold the infringing aligner in the United States. The German Defendants challenge the sufficiency of this allegation for two reasons. First, the German Defendants maintain that this allegation is deficient because it does not identify which Defendant sold the aligner. However, Snap-on's use of the collective term "Defendants," without distinguishing among the acts of each Defendant, is not fatal to its claim at this stage of the litigation. *See McZeal v. Spring Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (reversing district court's dismissal

of a complaint alleging that related defendants had offered an infringing product for sale without identifying which of the defendants had specifically offered the product for sale). Moreover, because this allegation collectively refers to "Defendants" whereas other allegations target specific defendants by name, we can reasonably infer that Snap-on is alleging that the Defendants collectively sold the infringing aligner in the United States.

Second, the German Defendants contend that Snap-on's allegation does not plausibly suggest that they were involved in the sale of the infringing aligner within the United States. The German Defendants rely heavily on *MEMC Elec. Materials, Inc., v. Mistubishi Materials Silicon Corp.*, in which the Federal Circuit considered whether a defendant had sold or offered to sell an allegedly infringing product in the United States. 420 F.3d 1369 (Fed. Cir. 2005). Defendant Sumitomo Mitsubishi Silicon Corporation ("SUMCO") was a Japanese corporation that manufactured silicon wafers exclusively in Japan for use in the semiconductor industry. *Id.* at 1372. SUMCO sold its wafers to Samsung Japan Corporation ("Samsung Japan"), which in turn sold the wafers to Samsung Austin Semiconductor ("Samsung USA"), located in Austin, Texas. *Id.* Plaintiff MEMC filed a patent infringement suit against SUMCO, alleging that SUMCO's silicon wafers infringed MEMC's patents. The district court granted SUMCO's motion for summary judgment on the basis that MEMC failed to offer

sufficient evidence that SUMCO sold or offered to sell the infringing product within the United States. *Id.* at 1371.

In affirming the district court's decision, the Federal Circuit observed that "determining the location of a 'sale' under Section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting and performance may take precedence over the passage of legal title.'" *Id.* at 1377 (quoting *N. Am. Phillips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994)). The court found that the plaintiff failed to identify any negotiations in the United States between SUMCO and Samsung USA, and therefore there was no offer to sell the infringing wafer in the United States. *Id.* The court further noted the lack of any evidence that title of the infringing wafers passed directly from SUMCO to Samsung USA, but rather that Samsung Japan served as an intermediary through which SUMCO fulfilled Samsung USA's orders. *Id.*

In stark contrast to the facts of *MEMC*, Snap-on alleges that substantial activity took place in the United States between and among the Defendants. In particular, Snap-on maintains that the Defendants have directly shipped and invoiced many of their initial sales to an Illinois address. Moreover, the Defendants held meetings in Illinois concerning the infringing product, allowing for the reasonable inference that some contract negotiations occurred in the United States. Finally, unlike in *MEMC*, the

German Defendants did not sell their product to a foreign intermediary, but rather they delivered the product directly to Bosch USA. Therefore, Snap-on has asserted a viable claim for direct infringement based on the German Defendants' sale or offer to sell the infringing product in the United States.

**B.     "Use"**

Additionally, Snap-on alleges that the German Defendants used the infringing product in Illinois. The "inquiry as to what constitutes a 'use' of a patented item is highly case-specific." *Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1140 (Fed. Cir. 2008). A defendant "uses" a patented product by "put[ting] it into action or service." *Id.* at 1141. Here, Snap-on maintains that the Defendants tested the field operation of the infringing aligner in Illinois and trained technicians in the operation and repair of the aligner in Illinois. Based on these allegations, we can reasonably infer that the German Defendants put the wheel aligner into action or service in order to both test it and to train technicians in the proper operation and maintenance of the aligner.

Therefore, Snap-on has sufficiently alleged that the German Defendants sold, offered to sell, or used the infringing product within the United States. Accordingly, the German Defendants' motion to dismiss Snap-on's claim of direct infringement is denied.

## III. Inducement to Infringe

Snap-on maintains that its complaint also states a claim against the German Defendants for inducing Bosch USA to infringe its patents. The German Defendants contend that Snap-on is judicially estopped from asserting such a claim, and in the alternative, that it has failed to plead sufficient factual matter to state this claim.

### A. Judicial Estoppel

As a threshold matter, the German Entities maintain that Snap-on is judicially estopped from asserting a claim of inducement to infringe because Snap-on represented to the Court at a status hearing and in prior pleadings that it would only pursue claims of direct infringement against the Defendants. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotations and citation omitted); *see also Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) (explaining that judicial estoppel "protect[s] the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories")

Snap-on did not "prevail" in a prior phase of this litigation by expressly abandoning its claim of inducement to infringe. Although Snap-on represented in open court that it sought to hold the German Entities liable for direct infringement, Snap-on's

in-court statements served to clarify that they did not intend to pursue a joint infringement claim[2] and in no way outlined their position regarding an inducement to infringe claim. Conspicuously absent from the status hearing was any discussion of Snap-on's inducement theory of liability.

The German Defendants next contend that Snap-on prevailed in its motion to file an amended complaint adding the German Defendants to the suit because it represented to the Court that it did not seek to add any new claims. In granting Snap-on's motion, the Court held that Bosch USA failed to show that it would suffer any undue prejudice by allowing the joinder of the German Defendants. The current claim for inducement to infringe does not prejudice Bosch USA in any way, nor does it materially expand the scope of discovery beyond what would be necessary for Snap-on to establish a claim of direct infringement against the German Defendants. Therefore, Snap-on did not prevail in its motion to file an amended complaint by representing to the Court that it would not pursue a claim of inducement to infringe. To the contrary, in a subsequent brief on this issue, Snap-on asserted that the amended complaint stated a viable claim of inducement to infringe against the German Defendants. Therefore, Snap-on is not

---

[2] A claim of "joint infringement" exists in a method infringement claim where one party exercises control or direction over the infringement "such that all steps of the process can be attributed to the controlling party." *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1380 (Fed. Cir. 2010) (citing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008)).

judicially estopped from asserting a claim of inducement, and we turn to the viability of this claim as it is pleaded.

### B.  Merits of Snap-on's Inducement Claim

Federal law provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to plausibly suggest that defendants: (1) specifically intended a third party to infringe the plaintiff's patent, and (2) knew that the third party's acts constituted infringement.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).  Snap-on alleges that Bosch Germany made the decision to introduce and to sell the infringing aligner in the United States.  Bosch Germany then commissioned Beissbarth to develop the infringing aligner, and the German Entities worked in conjunction with Bosch USA to devise a pricing and marketing plan for the sale of the aligner in the United States. Additionally, Snap-on alleges that prior to Bosch USA's introduction of the infringing aligner to the United States, it sent Bosch USA a letter warning that the product would infringe its patents.

These factual allegations are sufficient to state a claim that the German Defendants induced Bosch USA to infringe Snap-on's patents.  Taking Snap-on's allegations as true, the German Defendants were highly involved in the development,

marketing, and sale of the infringing aligner. Moreover, the German Defendants directed the infringing aligner to American consumers through Bosch USA, a subsidiary of Bosch Germany. Furthermore, Snap-on has alleged sufficient facts to plausibly suggest that the German Defendants were aware that their aligner infringed Snap-on's patents. Snap-on expressly alleges that the German Defendants knew of Snap-on's patents, which is supported by the fact that Snap-on apprised Bosch USA of the potential infringement of its aligner. Knowledge can plausibly be imputed to the German Defendants due to the close corporate ties of the Defendants. For example, Snap-on alleged that (1) Bosch USA and Beissbarth are wholly-owned subsidiaries of Bosch Germany, (2) the Defendants share physical assets and intellectual property, and (3) the presidents of Beissbarth and Bosch USA hold high-level management positions at Bosch Germany. These allegations plausibly suggest that the German Defendants had knowledge of Snap-on's patent and specifically intended that Bosch USA infringe on this patent.

The German Defendants nevertheless maintain that Snap-on's claim is deficient because it does not expressly state the elements of an inducement claim. In fact, the words "induce" and "inducement" are conspicuously absent from the complaint. However, Federal Rule of Civil Procedure 8(a) does not require a plaintiff to plead a legal theory in its complaint. *See La Porte Cnty. Republican Cent. Comm. v. Bd. of*

*Comm'rs of Cnty. of La Porte*, 43 F.3d 1126, 1129 (7th Cir. 1994) (stating that a complaint "need not plead law, and it is not tied to one legal theory"); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (explaining that "a complaint need not identify a legal theory, and specifying an incorrect theory is not fatal"). Although the amended complaint does not explicitly assert that Snap-on is pursuing a claim of indirect infringement, the allegations contained therein are sufficient to put the German Defendants on notice of the allegedly unlawful conduct in which they engaged. Such notice is all that is required under Rule 8(a). *See McCauley v. City of Chi.*, 671 F.3d 611, 626 (7th Cir. 2011) ("The primary purpose of notice pleading under Rule 8 is notice."). Accordingly, the German Defendants' motions to dismiss Snap-on's claims of inducement to infringe are denied.

## CONCLUSION

In light of the foregoing, the German Defendants' motions to dismiss Snap-on's complaint are denied.

                                             _____
                                             Charles P. Kocoras
                                             United States District Judge

Dated:  July 11, 2012