UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SNAP-ON INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09 C 6914 |
| | ) | |
| ROBERT BOSCH, LLC, ROBERT BOSCH, | ) | |
| GmbH, and BEISSBARTH GmbH, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant Robert Bosch, GmbH's ("Bosch GmbH")

motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and Plaintiff Snap-

On Incorporated's ("Snap-On") motion to strike pursuant to Rule 12(f). For the

following reasons, Snap-On's motion is denied, and Bosch GmbH's motion is denied.

## BACKGROUND[1]

Snap-On is incorporated under the laws of Delaware with its principal place of

business in Kenosha, Wisconsin. On November 3, 2009, Snap-On filed a complaint

against Robert Bosch, LLC ("Bosch USA"), alleging that Bosch USA infringed on

several of its patents relating to a wheel alignment system used to repair automobiles.

---

[1] The Court accepts the uncontested allegations from Snap-On's first amended complaint as true and resolves any factual conflicts in Snap-On's favor. *Elec. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

On August 18, 2011, Snap-On filed an amended complaint, which added Bosch GmbH and Beissbarth GmbH ("Beissbarth") as defendants. Bosch GmbH and Beissbarth are corporations organized under the laws of Germany. Beissbarth and Bosch USA are subsidiaries of Bosch GmbH. The presidents of both subsidiaries hold high-level management positions at Bosch GmbH. Beissbarth and Bosch GmbH each distribute their products for sale in North America through Bosch USA.

According to Bosch GmbH's 2010 Annual Report, Bosch GmbH "is a leading global supplier of technology and services." It is comprised of Bosch GmbH and 350 subsidiaries and regional companies, including Beissbarth and Bosch USA. Bosch GmbH's subsidiaries are organized into "sectors and divisions." The "Automotive Aftermarket" ("AA") division is run by Bosch GmbH employee Robert Hanser ("Hanser"). Within AA is the "Business Units" sub-division, run by Bosch GmbH's employee Marco Faulenbach ("Faulenbach").

In October of 2007, Hanser issued a memorandum entitled "Strategy for the Success and Growth of the Bosch Automotive Aftermarket division." In the memo, Hanser expounds the belief that "the greatest opportunities in our market lie in the field of diagnostics." In attempting to reach its goal of "developing Bosch Diagnostics as a global player and [t]o become the global market leader," Hanser announced a "significant step forward" in achieving that goal by Bosch GmbH's April 2007 acquisition of Beissbarth, whose "key focus is on chassis and axle alignment as well as brake test stands and test lines." According to Hanser, Beissbarth's

acquisition meant "significant expansion for our product range in the area on non-contact, optical axle alignment technology."

Bosch GmbH's 2007 Annual Report recognized the United States as the company's "most important markets outside Germany." The report identified Bosch GmbH's acquisition of Beissbarth as an example of its expansion of its services business. The Annual Report also recognized Bosch GmbH's recent acquisition of two other foreign brake and wheel alignment companies.

In a March 13, 2008 press release, Bosch GmbH announced the acquisition of the Ashland, Virginia-based company Accu Industries Inc. ("Accu Industries"). A quote attributed to Hans-Peter Meyen ("Meyen"), a member of the AA's executive management, states that "we want to improve the distribution and service offered by our Bosch Diagnostics business unit in North America. In this market, Accu Industries is well established in the aftersales segment, and is therefore a logical extension to the business we already have in the U.S."

On November 28, 2008, Bosch GmbH supervisor Faulenbach gave a presentation titled "Product Launch: NAFTA Easy 3D Wheel Aligner." The presentation advertised the Easy 3D wheel aligner as a "joint engineering effort combining the best out of Bosch [GmbH] and Beissbarth engineering technology." On December 2, 2008, Bosch USA employee James Frazer sent an email to other Bosch USA employees relating to the topics which were discussed at the Bosch GmbH meeting. The email instructed the Bosch USA recipients to "provide detailed

launch plans" for the Easy 3D wheel aligner that was the subject of the Bosch GmbH presentation four days prior. On December 14, 2008, Bosch GmbH employee Klaus Michael-Koch sent an email to several Bosch USA employees instructing them to attend a workshop on wheel aligners and brake testers to determine international needs which was to take place at Beissbarth's facility in Munich, Germany, on January 30, 2009.

On February 5, 2009 a meeting was held at Bosch USA's Broadview, Illinois office. Among those at the meeting included Faulenbach and Bosch GmbH's corporate controller Ulrich Thiele ("Thiele"). The meeting minutes reflect that a discussion took place regarding the Easy 3D wheel aligner, and that Faulenbach gave a presentation on the technical and financial goals concerning the introduction of the wheel aligner into the U.S. market.

On March 11, 2009, Faulenbach and Thiele attended another meeting at Bosch USA's Illinois office. Minutes of the meeting show that transfer and market prices of the wheel aligners were one of the topics discussed. Later internal correspondence indicates that Faulenbach and three other Bosch GmbH employees set the final transfer price structure. In response to an interrogatory, Bosch GmbH acknowledged that it provided technical assistance with respect to the allegedly infringing wheel aligner, but that such assistance was provided in Germany, and that the support ended prior to the launch of the wheel aligner in the United States market.

In May 2009, Bosch USA's Frazer sent an email to another Bosch USA employee, David Scribner ("Scribner") with the subject line "Re: Easy 3D Project Status." The email contained a request from Faulenbach that Scribner (1) reformat "open items," (2) organize a teleconference with Beissbarth "to discuss and gain agreement, assign responsibilities and due dates," and (3) "provide the final agreed OPL to [Faulenbach] by end of next week (6/5) together with a clear overview of the launch plan." A meeting was planned for July 30, 2009 where the Easy 3D wheel alignment system was on the agenda.

On July 14, 2009, Bosch GmbH's Vice President of Sales Gurcan Karakas ("Karakas") emailed Bosch USA employee James Graninger ("Graninger") and asked if Graninger had already presented the Easy 3D wheel aligner to Firestone, a potential customer for the wheel aligner. Graninger responded that the Easy 3D wheel system was still being evaluated in Ashland, Virginia, and that there were still software issues that needed to be resolved with Beissbarth. Karakas replied to Graninger and also sent the email to Faulenbach and Meyen, saying that Graninger's assessment "was not satisfactory at all," and to "Pls clarify the situation rgd Easy 3D in NA during [Faulenbach's] visit." Karakas requested that the Bosch USA team members brief Faulenbach on the status of the Easy 3D system when he arrived in Illinois in the coming days.

A subsequent July 15, 2009 email indicates that Bosch USA employees were "on line" with three Beissbarth employees "conducting live tests" on the Easy 3D

aligner. Upon the conclusion of the testing session it was agreed that one of the Beissbarth employees would travel with a development engineer to Virginia to continue the testing.

On July 16, 2009, Faulenbach attended a meeting at Bosch USA's Illinois office. Thiele and Graninger were also present. The meeting minutes show that "engineering status" was discussed. Graninger emailed Karakas after the meeting and confirmed that he presented the Easy 3D system status update and that Beissbarth engineers were being sent to Virginia "to work side by side with our USA team to urgently resolve these issues."

On July 15, 2009, Frazer emailed a Bosch USA employee indicating that he was scheduled to meet with Hanser "this Friday," and requested a "summary of the open tech issues" on the infringing aligner in preparation for a meeting that was to take place the following month. A three-day meeting occurred from August 5-7, 2009 in Virginia which Faulenbach attended. The minutes indicate that there was a live demonstration of the Easy 3D wheel aligner as well as a discussion of the sales and marketing of the product. In November 2009 the Easy 3D Wheel Alignment system was launched.

On August 18, 2011, Snap-On filed an amended complaint adding Bosch GmbH and Beissbarth GmbH (" Beissbarth") as defendants. On January 16, 2012, Bosch GmbH filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Court allowed limited jurisdiction

discovery which closed in December 2012. The parties have completed briefing, and the issues are ripe for decision.

## LEGAL STANDARD

When a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Merial Ltd. v. Cipla Ltd,* 681 F.3d 1283, 1294 (Fed. Cir. 2012). When jurisdictional discovery has been exchanged by the parties, without the occurrence of an evidentiary hearing, the plaintiff must make a prima facie showing that the defendants are subject to personal jurisdiction. *Electronics,* 340 F.3d at 1349; *AFTG-TG, LLC v. Nuvoton Technology Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (when a district court relies on written submissions from the parties without holding an evidentiary hearing, the plaintiffs are required to allege a prima facie showing of personal jurisdiction).

## DISCUSSION

### I. Snap-On's Motion to Strike

As a preliminary matter, Snap-On moves pursuant to Rule 12(f) to strike three affidavits which Bosch GmbH attached to its reply brief in support of its motion to dismiss. In pertinent part, Rule 12(f) permits a district court, on motion of a party, to "order stricken from any pleading any insufficient defense or any redundant . . . matter." Snap-On asserts that the affidavits were produced after the close of jurisdictional discovery, and their inclusion prejudices their position because they cannot refute the assertions contained therein. Because motions to strike can be used

as delay tactics, they are generally not a favored part of motion practice. *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir. 1975).

Bosch GmbH filed their reply brief in support of its motion to dismiss and attached the declarations of: (1) Harald Neumann, an employee at Bosch GmbH; (2) James Frazer, an employee at Bosch USA; and (3) Marco Kempin, an employee of Beissbarth GmbH. Bosch GmbH contends that the declarations are proper and merely respond to matters which Snap-On brought into issue. Bosch GmbH has supplied the three declarations to contest the assertions supplied by Snap-On in opposing Bosch GmbH's motion to dismiss. The three declarations merely refute all of Snap-On's assertions, which were gleamed from the substantial discovery exchanged by the parties. The Court determines that Bosch GmbH's declarations "merely respond[] to matters placed in issue by the opposition brief" and have been appropriately offered. *See Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996).

Although Bosch GmbH properly included the declarations, the Court is mindful of its duty to weigh the credibility of the evidence presented by the parties. The Court will consider the inability of Snap-On to contest the assertions made by the declarants. The Court denies Snap-On's motion to strike.

**II. Bosch GmbH's Motion to Dismiss**

Snap-On relies on Rule 4(k)(2) to support their contention that Bosch GmbH has established minimal contacts in the United States to be subjected to personal jurisdiction in this forum. Bosch GmbH does not specifically address Rule 4(k)(2) but

broadly contends that it has not purposefully directed their activities to the United States to make them subject to the Court's jurisdiction.

Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico,* 563 F.3d 1285, 1295-96 (Fed. Cir. 2009) (citing advisory committee notes to the 1993 amendment establishing Rule 4(k)(2)). Rule 4(k)(2) establishes jurisdiction over a defendant when process has been served and three requirements are met: (1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009). The first two requirements of Rule 4(k)(2) are uncontested and are easily resolved. Snap-On has brought suit against Bosch GmbH for patent infringement under the Patent Laws of the United States. Pursuant to 28 U.S.C. § 1338(a), a federal district court has "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. . . ." 28 U.S.C. § 1338(a). *See also Kroll v. Finnerty,* 242 F.3d 1359, 1363 (Fed. Cir. 2001); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (stating that U.S. district courts possess subject matter jurisdiction over civil actions that arise under any Act of Congress relating to

patents). Furthermore, Bosch GmbH does not assert that jurisdiction in another state would be proper. *See Touchcom,* 574 F.3d at 1415.

The parties contest whether it is constitutional to exert personal jurisdiction over Bosch GmbH. Whether a court has personal jurisdiction over a defendant in a patent case is determined according to the law of the Federal Circuit rather than of the regional circuit in which the case arose because jurisdictional questions are "'intimately involved with the substance of the patent laws.' " *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir. 1995)).

Courts may exercise personal jurisdiction over defendants on either of two bases: general or specific jurisdiction. *Touchcom*, 574 F.3d at 1410. Snap-On does not allege general jurisdiction in the present case. Under general jurisdiction, the exercise of jurisdiction is proper where the defendant has continuous and systematic contacts with the forum state, even if those contacts are not related to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Snap-On solely seeks to establish that the Court has specific jurisdiction over Bosch GmbH.

**1. Specific Personal Jurisdiction**

In evaluating Bosch GmbH's contacts, it is significant to note that Rule 4(k)(2) serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not

with the forum state, satisfy due process. *Synthes,* 563 F.3d at 1296. Rule 4(k)(2) allows the plaintiff to aggregate a defendant's contacts with the entire nation as opposed to an individual forum state. *See id.*

Specific personal jurisdiction arises out of or relates to the cause of action even if those contacts are isolated and sporadic. *LSI Industires Inc., v. Huddelll Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). To satisfy due process, a party must have minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Commisariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 395 F.3d 1315, 1320 (Fed. Cir. 2005). A court may not exercise personal jurisdiction on the basis of random, fortuitous or attenuated contacts, or due to the "unilateral activity of another party or a third person." *Helicopteros,* 466 U.S. at 417. The Federal Circuit applies a three-part test to determine if personal jurisdiction over a foreign defendant comports with due process: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *AFTG-TG, LLC,* 689 F.3d at 1363.

### a. Conduct Purposefully Directed to the United States

Bosch GmbH asserts that Snap-On has failed to establish that Bosch GmbH purposefully directed their corporation's activities to the United States. However, the

- 11 -

evidence indicates that Bosch GmbH made a concerted effort to purposefully focus their energies and resources in the United States. The record suggests that Bosch GmbH was not a passive corporate overseer of its subsidiaries, but an involved participant in the development, marketing and ultimately the sale of the Easy 3D wheel alignment system to the United States.

Bosch GmbH implores the Court to relegate our consideration to Bosch GmbH's individual efforts, to the exclusion of Bosch GmbH's interactions and oversight of Bosch USA and Beissbarth. Bosch GmbH offers the declaration of Harold Neumann who blankly states that Bosch GmbH does not control or direct the acquisition requirements of Beissbarth or Bosch USA. The evidence highlighted by Snap-On indicates that Bosch GmbH played a considerable role in directing their subsidiaries and dictating the parameters of the Easy 3D wheel alignment system. Beginning in 2007 Bosch GmbH engaged in a series of targeted corporate acquisitions aimed at increasing the company's global footprint with respect to the field of automotive diagnostics. Bosch GmbH's expansion allowed the company to focus its subsidiaries' efforts on the development of cutting edge technology, specifically the Easy 3D wheel alignment system. In corporate literature Bosch GmbH highlighted its position that they viewed the United States as the most important market outside of Germany. To facilitate the company's focus on the United States, Bosch GmbH acquired Accu Industries, a Virginia based automotive distribution and service company, to expand the reach of Bosch Diagnostic in North America. In the years

building up to the launch of the Easy 3D wheel aligner, Bosch GmbH acquired Beissbarth and Accu Industries, companies that could respectively manufacture and distribute a wheel alignment system to the United States.

The priority and importance of the Easy 3D wheel alignment system to Bosch GmbH is evidenced in the multiple meetings attended by Bosch GmbH's corporate executives in the United States. On three occasions Bosch GmbH's corporate executive attended meetings at Bosch USA's corporate headquarters in Broadview, Illinois. During those meetings the Easy 3D wheel alignment system was a prominent topic of discussion. A presentation on the Easy 3D alignment system was given by Bosch GmbH executives, and developmental issues related to the refinement and sales of the Easy 3D were discussed. The dual efforts of Bosch GmbH and Bosch USA indicate that both companies were working together to develop the Easy 3D wheel alignment system for its entry into the U.S. market.

In addition to the numerous meetings attended in Illinois, Bosch GmbH corporate executives visited the Bosch USA facilities in Ashland, Virginia on several occasions. The meetings and consultations in Virginia between the Bosch GmbH representatives and Bosch USA employees involved the progress of the Easy 3D wheel alignment system at various stages of development. Technical issues were resolved with the oversight of Bosch GmbH, testing was conducted, and finally sales and marketing of the wheel alignment system took place in Virginia. Bosch GmbH

purposefully traveled to Illinois and Virginia to oversee the development of the Easy 3D wheel alignment system.

The consistent oversight and involvement of Bosch GmbH corporate executives indicates that Bosch GmbH and its subsidiaries Bosch USA and Beissbarth were collectively working to achieve the success of the Easy 3D wheel alignment system in the United States. The deliberate and orchestrated actions of Bosch GmbH in the United States are sufficient to establish that they purposefully directed their activities to the residents of the United States.

The Court declines Snap-On's invitation to determine if they made a prima facie showing that Bosch GmbH's activities in the United States constituted patent infringement. Personal jurisdiction, not liability for patent infringement, is at issue at this juncture. *See Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997). The only question before the Court is whether exercising jurisdiction over Bosch GmbH comports with due process. *See Synthes*, 563 F.3d at 1298. Therefore, the Court expresses no opinion concerning Snap-On's showing of inducement of infringing conduct or direct infringement on the part of Bosch GmbH. *See id.*

**b. Claims arise out of Bosch GmbH's activities in the United States**

The second factor in the due process analysis requires the Court to determine if Snap-On's claims have arisen out of Bosch GmbH's conduct in the United States. Neither party contests this issue, and the Court finds that Bosch GmbH's contacts

arise out of the activities within the United States that form the basis for the litigation in this case.

### c. Exercising Jurisdiction would be Reasonable and Fair

Bosch GmbH argues that their limited involvement with the Easy 3D wheel alignment system is insufficient to give them fair warning that they could be subject to the jurisdiction of this forum. In determining whether exercising jurisdiction comports with "fair play and substantial justice, the Court considers five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive policies." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

Bosch GmbH will face a burden in subjecting themselves to a foreign nation's judicial system and travelling from Germany. However, the "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Synthes*, 563 F.3d at 1299 (quoting *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980). In the past five years, Bosch GmbH representatives have traveled to the United States on at least five occasions. In light of the frequency that Bosch GmbH's representatives traveled to the U.S. the Court deems Bosch GmbH's travel requirements as not unduly burdensome.

Additionally the burden of travel which must be borne by Bosch GmbH is outweighed by the interest of the United States in adjudicating Snap-On's dispute and obtaining convenient relief of their claims, as contemplated by the second and third considerations of the due process analysis. *See Synthes*, 563 F.3d at 1299. The United States has a strong interest in enforcing its federal patent laws. *Id*. The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994). Although Snap-On could have sued Bosch GmbH in Germany, a suit brought there involving Bosch GmbH in conjunction with Bosch USA would be unduly cumbersome. Germany does not have a substantial interest in resolving Snap-On's expansive U.S. patent infringement claims. The United States has a strong interest in resolving patent infringement claims involving U.S. patents brought by a U.S. based company. Bosch GmbH has availed themselves of the laws of the United States and it would not offend traditional notions of fair play and substantial justice to require Bosch GmbH to defend this action. The Court concludes that Snap-On has established that this Court may exercise personal jurisdiction over Bosch GmbH.

- 17 -

**CONCLUSION**

For the foregoing reasons, Snap-On's motion to strike Bosch GmbH's declarations is denied.    Bosch GmbH's motion to dismiss for lack of personal jurisdiction is denied.

_____
Charles P. Kocoras
United States District Judge

Dated:   May 24, 2013  .